IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ERICA SCHOEN,                                    06-CV-551-BR

                Plaintiff,                       OPINION AND ORDER

v.

FREIGHTLINER LLC,

                Defendant.


**RICHARD C. BUSSE**
Busse & Hunt
621 S.W. Morrison Street
Suite 521
Portland, OR 97205
(503) 248-2131

        Attorneys for Plaintiff

**JEFFREY M. KILMER**
Kilmer Vorhees & Laurick, PC
732 N.W. 19th Avenue
Portland, OR 97209
(503) 224-0055

        Attorneys for Defendant


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Freightliner LLC's Motion for Summary Judgment (#23) as to all claims brought by Plaintiff Erica Schoen.

On February 22, 2007, the Court heard oral argument.  The parties agreed Plaintiff's claims are as follows:  Claim One, discharge in retaliation for filing an earlier action against Defendant in violation of Or. Rev. Stat. § 659A.040 or, in the alternative, in violation of Oregon common law; Claim Two, retaliatory discharge in violation of Or. Rev. Stat. § 659A.030(1)(f); Claim Three, discharge in retaliation for asserting statutory rights as an injured worker in violation of Oregon common law; Claim Four, discharge in retaliation for asserting statutory rights as an injured worker in violation of Or. Rev. Stat. § 659A.100; Claim Five, discharge in retaliation for resisting sexual harassment in violation of Oregon common law; and Claim Six, discharge in retaliation for resisting sexual harassment in violation of Or. Rev. Stat. § 659A.030(1)(f).

For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment (#23).


## FACTUAL BACKGROUND

The facts are viewed in the light most favorable to Plaintiff and are undisputed unless otherwise noted.

2 - OPINION AND ORDER

Plaintiff was employed by Defendant from June 1998 until February 2006.  In 2002 Plaintiff suffered a work-related shoulder injury.  Plaintiff believes Defendant did not adequately accommodate her injury and, in addition, inflicted emotional distress on Plaintiff after her injury.

In March 2004, Plaintiff filed an action against Defendant in Multnomah County Circuit Court (*Schoen I*) in which she brought a claim for injured-worker discrimination and a claim for intentional infliction of severe emotional distress (IIED). Although Plaintiff was still employed by Defendant, she did not work significant hours in the months preceding or during the *Schoen I* trial.  On September 15, 2005, a jury returned a verdict in Plaintiff's favor as to the IIED claim only and awarded her $250,000 in damages.

After the *Schoen I* jury verdict in September 2005, Plaintiff returned to work.  Defendant was concerned issues might arise from Plaintiff's unresolved problems with Defendant's managers if those problems were left unchecked.  On August 18, 2005, just before Plaintiff came back to work, Defendant asked Plaintiff to consider using a special reporting "back channel" through which she could quickly notify Defendant of any problems she had.  On September 27, 2005, Plaintiff advised Defendant that the special reporting system was unacceptable to her because she wanted to be treated like any other employee.  Defendant responded:

3 - OPINION AND ORDER

> It is [Plaintiff] who claims to have felt
> uncomfortable about things that allegedly
> bothered her at work.  [Defendant] has made
> every attempt to assist her transition back to
> work and to create an environment where she can
> feel safe and avoid unnecessary difficulties.
> [Plaintiff's] complete rejection of these
> attempts is duly noted.

Kilmer Aff., Ex. 7.

For medical reasons that appear to be unrelated to this matter, Plaintiff worked only 13 days from September 2005 until her termination in February 2006.

When an employee misses work for medical reasons without first submitting a doctor's note or other authorization from a health-care provider, Defendant's medical-leave policy requires the employee to submit a time-loss authorization from a medical provider by the end of the employee's shift on the day following the absence.  In addition, an employee who seeks to extend previously authorized medical leave is required to provide a new medical authorization by the scheduled return-to-work date.  When an employee does not comply with the reporting requirements, Defendant issues a "reporting requirements letter" (RRL) as a formal warning.  Under the terms of Defendant's collective-bargaining agreement with Plaintiff's union, an employee who receives three RRLs is automatically terminated.

Defendant contends its reporting policy must be and is strictly enforced.  *See* Garr Decl. ¶ 9 (RRLs have been given because submissions were made two or three hours late); Houghton

4 - OPINION AND ORDER

Decl. ¶ 3 (Defendant strictly enforces the policy to avoid "slippery slope" enforcement); LaRochelle Decl. ¶ 6 (during Wayne LaRochelle's tenure as Human Resources Manager, no exceptions to reporting requirements were offered to any employee nor were exceptions requested). Although Defendant admits some leeway is occasionally given in rare circumstances, Defendant asserts enforcement of its policy results in the termination of approximately ten to fifteen employees per year for noncompliance. Garr Decl. ¶ 14.

Plaintiff, however, contends Defendant's enforcement is less rigid than Defendant asserts. Plaintiff maintains a telephone call to Defendant advising that a medical authorization is on the way suffices under most circumstances even if the authorization arrives after the deadline.

Plaintiff was cleared for medical leave on October 7, 2005, but she failed to submit authorization from a medical provider by the end of her scheduled shift at 2:45 p.m. on October 12, 2005, to extend that leave. As a result, Defendant issued Plaintiff's first RRL on October 12, 2005. Plaintiff submitted a medical authorization on October 13, 2005.

On approximately October 21, 2005, Plaintiff discussed her first RRL with Wayne LaRochelle, Defendant's Human Resources Manager. Plaintiff asserts she told LaRochelle that she did not submit her medical authorization on time because of a late-day

doctor's appointment that was not her fault.  Plaintiff contends
LaRochelle told her that he would personally "take care" of any
RRLs she received (*i.e.*, take them off of her record) when she
had late-day medical appointments such as this one.  Plaintiff
considered this a "promise."

LaRochelle, however, denies he offered to "take care" of
Plaintiff's first RRL or any future RRLs.  Indeed, after
LaRochelle spoke to Plaintiff about her first RRL, he wrote her a
letter on November 16, 2005, in which he stated Plaintiff's first
RRL was justified because she failed to comply with Defendant's
medical-reporting requirements.  Plaintiff did not object to this
letter.  LaRochelle also took notes of a telephone conversation
that occurred on November 16, 2005, in which he and Plaintiff
discussed the first RRL.  The notes reflect LaRochelle told
Plaintiff that Defendant would "work through the normal practice"
regarding Plaintiff's RRLs.  LaRochelle also sent Plaintiff a
letter on December 14, 2005, reiterating that the first RRL was
automatic under the circumstances.

Plaintiff worked on October 17, 18, and 19, 2005.  On
October 18, 2005, Plaintiff was walking past a male co-worker's
work station and saw a number of co-workers gathered around a
computer monitor that showed the image of a nude female with her
legs apart.  A short time later, Plaintiff walked past the same
work station and saw another similar image on the computer

6 - OPINION AND ORDER

screen.  A male co-worker called to Plaintiff to come over to the
screen and "check this out."  Plaintiff responded the images were
sick and walked away.  On October 21, 2005, Plaintiff reported
the incident to LaRochelle, who, in turn, launched an internal
investigation.  Defendant ultimately suspended over 30 employees
because of the incident.

Plaintiff contends she asked LaRochelle not to disclose that
she complained about the images because she feared for her
safety.  Plaintiff asserts LaRochelle obviously did not keep her
identity a secret because her co-workers seemed to know that she
was the one who complained about the incident.  As a result,
Plaintiff asserts she received threatening telephone calls at
home, and an employee approached her at work and said he would
"kill" whoever "snitched" about the incident.  According to
Plaintiff, Defendant effectively placed a "bull's-eye" on her at
work by intentionally posting her complaint on an employee
bulletin board.  Defendant, however, maintains it did not reveal
Plaintiff's identity to anyone and, in fact, asserts it was
Plaintiff's union that posted notice of her complaint and
contacted the local media to publicize the incident.  Neither
Plaintiff nor Defendant provides any evidence to support their
assertions about this episode.

Plaintiff worked on October 21 and 24, 2005.  On October 21,
2005, one of Plaintiff's immediate supervisors told Plaintiff

7 - OPINION AND ORDER

that she was ineligible for overtime.  Plaintiff contends similarly situated employees were considered eligible for overtime, but she was suddenly ineligible after returning to work following *Schoen I*.  Plaintiff told LaRochelle that she had been wrongfully denied the opportunity to work overtime.  LaRochelle investigated and determined Plaintiff's supervisor erroneously thought Plaintiff was ineligible because of her shoulder injury. LaRochelle asserts he informed Plaintiff's supervisor that she was eligible for overtime, and LaRochelle believed Plaintiff was satisfied with his handling of the overtime issue.  In any event, Defendant points out this incident was based on a mistake that was quickly corrected.

Due to a series of excused medical absences, Plaintiff did not work between October 25, 2005, and January 4, 2006. Defendant thought Plaintiff was excused only through January 2, 2006.  On January 4, 2006, Defendant started to prepare an RRL because Plaintiff missed her shift on January 3, 2006.  After reviewing Plaintiff's medical authorization, however, Defendant realized Plaintiff reasonably might have believed that she was excused through the end of her January 3 shift.  In light of this potential confusion and because Plaintiff returned to work on January 4, 2006, Defendant did not issue an RRL.

Plaintiff obtained medical authorizations excusing her from work from January 5, 2006, through January 31, 2006.  Plaintiff

worked on February 1 and 2, 2006, and then obtained medical authorization to take medical leave through February 7, 2006.

In the meantime, on February 3, 2006, Plaintiff contacted Marilynd Turnock, R.N., a registered nurse who worked for Plaintiff's doctor, concerning a medical authorization.  Turnock reports in a chart note:

> [Plaintiff] states her work situation has caused her time off from work on and off for months.  She requires a letter for 3 days off which is excused for medical leave and they give her time off.  If she doesn't have a letter it is unexcused.  She needs to turn in the letter no later than 2/07/06 at 2:30pm when her shift ends.  She would like to have the letter ahead of time [due to] her stress level.

Kilmer Decl., Ex. 41 at 1.

Plaintiff was released to work on February 8, 2006.  If Plaintiff wanted to continue her medical leave, therefore, she was required to submit a medical authorization by the end of her shift on February 8, 2006, at 2:45 p.m.  Plaintiff contends she telephoned Defendant at 2:39 p.m. to advise she had a doctor's appointment that day and a medical authorization would follow. Defendant, however, denies recording such a telephone call and did not receive the written medical authorization until the morning of February 9, 2006, about 16 hours late.  As a result, Defendant issued Plaintiff a second RRL on February 9, 2006.

Plaintiff was medically excused through the end of her shift on February 12, 2006.  She had a scheduled shift on

9 - OPINION AND ORDER

February 13, 2006, so authorization for continued medical leave was due by 3:00 p.m. that day.  Plaintiff telephoned her doctor on February 13, 2006, at 10:47 a.m. to request a medical-leave authorization.  Defendant, however, did not receive Plaintiff's written authorization until Plaintiff faxed it approximately two days late on February 15, 2006, at 11:30 a.m.  Defendant issued a third RRL to Plaintiff on February 15, 2006, and, in accordance with its policies, terminated her employment on that day.

On March 30, 2006, Plaintiff filed this action in Multnomah County Circuit Court (*Schoen II*).  On April 25, 2006, Defendant removed this action from state court to federal court on the basis of diversity jurisdiction.  Oregon law, therefore, applies to the substantive issues in the case.

Defendant filed its Motion for Summary Judgment on November 30, 2006.  As noted, the Court heard oral argument on February 22, 2007, and took the Motion under advisement at that time.

## DEFENDANT'S OBJECTIONS TO PLAINTIFF'S EVIDENCE

Defendant raises a number of evidentiary objections.  Defendant contends the events preceding *Schoen I* are irrelevant on the basis of either claim or issue preclusion.  Defendant also objects to other evidence submitted by Plaintiff on the basis of relevance.

10 - OPINION AND ORDER

I.    **Claim and Issue Preclusion.**

    A.    **Claim and Issue Preclusion Generally.**

A federal court sitting in diversity must apply the claim and issue preclusive doctrines of the state in which it sits. *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201 (9th Cir. 1982). Under Oregon law, claim preclusion prohibits a party from relitigating a claim for relief against the same defendant involving the same factual transaction as was litigated or could have been litigated in the previous adjudication. *Drews v. EBI Cos.,* 310 Or. 134, 139-40 (1990). Issue preclusion, on the other hand, prohibits relitigation of a legal or factual issue if the issue was "actually litigated and determined" in a setting where "its determination was essential to" the final decision reached. *Id.* at 139.

    B.    **Defendant's Objections to Plaintiff's Exhibits 4-6, 8, 10, 12, 14-15, and 17-20 Are Not Barred by Either Claim or Issue Preclusion.**

Defendant asserts the following exhibits relevant to *Schoen I*, which are attached to Plaintiff's Response to Defendant's Motion, are barred by claim and/or issue preclusion: (1) Exhibit 4, Julie Burke's Affidavit, contains allegations of mistreatment that were raised in *Schoen I*; (2) Exhibit 5, Mike Calkins's Affidavit, contains allegations that Calkins was "discouraged" from finding a suitable position to accommodate Plaintiff's shoulder injury before Plaintiff filed *Schoen I*;

11 - OPINION AND ORDER

(3) Exhibit 6, transcripts of certain depositions taken during
*Schoen I*; (4) Exhibit 6, Plaintiff's deposition testimony taken
during *Schoen I* that Defendant's supervisors would occasionally
walk by and "watch" her as she worked; (5) Exhibit 8, deposition
taken in *Schoen I* of Trudy Houghton, Plaintiff's former
supervisor whom Plaintiff asserted frequently harassed her;
(6) Exhibit 10, deposition taken in *Schoen I* of Jennifer Marple,
whom Plaintiff asserted harassed her before *Schoen I* was filed;
(7) Exhibit 12, deposition taken in *Schoen I* of Rosemary
Rasmussen; (8) Exhibit 15, transcript excerpts dated August 2,
2005, from *Schoen I*; (9) Exhibits 17 and 19, two "Transitional
Duty Offers" from Defendant before *Schoen I* following Plaintiff's
shoulder injury; and (10) Exhibits 18 and 20, doctors' notes
restricting Plaintiff to light duty in October 2003 before
Plaintiff filed *Schoen I*.

    In *Schoen I*, Plaintiff brought claims for disability
discrimination and IIED.  All of Plaintiff's six claims in
*Schoen II* involve the termination of her employment after trial
in *Schoen I*, that is, the key event underlying Plaintiff's
termination claims (*i.e.*, her termination) occurred several
months after the jury rendered a verdict in *Schoen I*.  Thus, even
though *Schoen I* and *Schoen II* involve the same parties and *Schoen
I* proceeded to final judgment on the merits, the evidence of
events preceding the filing of and relating to the case of *Schoen*

12 - OPINION AND ORDER

*II* are not barred by claim preclusion because the they could not have been brought as part of *Schoen I*. *See, e.g., Bloomfield v. Weakland*, 339 Or. 504, 511 (2005)(claim preclusion bars claims in a second action that "could have been joined in the first action.").

In addition, the exhibits at issue here are not barred by issue preclusion to the extent that they demonstrate Defendant's potential animus toward Plaintiff. Evidence of events that preceded *Schoen I* potentially could be probative of Defendant's past animus toward Plaintiff and could tend to support Plaintiff's contention that Defendant wrongfully terminated Plaintiff because of that animus.

Because the issue of Defendant's underlying motives when it fired Plaintiff could not have been "actually litigated and determined" in *Schoen I*, her termination and the causes for it could not have been "essential to" the judgment in that action. *See Drews,* 310 Or. at 139. Accordingly, the Court concludes claim preclusion is inapplicable and issue preclusion does not render the exhibits at issue inadmissible to the extent that they tend to support Plaintiff's allegations that Defendant bore animus toward Plaintiff. Thus, the Court will consider these exhibits to this limited extent for purposes of Defendant's Motion.

13 - OPINION AND ORDER

II.  **Defendant's Other Evidentiary Objections.**

    A.  **Defendant's Objection to Plaintiff's Exhibit 43.**

    With her Response, Plaintiff submitted Exhibit 43, which
includes a series of pictures of naked women and a male and a
female engaged in sex acts.  Plaintiff, however, does not allege
she saw more than two pictures nor that she saw pictures of a
male and female together.  Although Defendant concedes one or two
pictures in this series were likely seen by Plaintiff on October
18, 2005, and form the basis of her sexual-harassment claims,
Defendant objects to Exhibit 43 on the ground that it is
irrelevant and inflammatory.

    The Court agrees the entirety of Exhibit 43 is irrelevant
under Federal Rule of Evidence 401, and, even if it were not
irrelevant, the probative value of Exhibit 43 as a whole likely
would be outweighed by the risk of unfair prejudice pursuant to
Rule 403.

    In any event, because Defendant concedes Plaintiff saw as
many as two images of nude women, it is unnecessary for the Court
to consider Exhibit 43 as a whole for purposes of Defendant's
Motion.

    B.  **Defendant's Objections to Miscellaneous Exhibits
        Submitted by Plaintiff.**

    Defendant contends Plaintiff's Exhibit 3, paragraph 5, in
which the declarant indicates the *Schoen I* verdict was

unsuccessfully mediated does not tend to prove any fact at issue in this matter. The Court agrees this statement is irrelevant and, therefore, will not consider paragraph 5 of Exhibit 3 for purposes of Defendant's Motion.

Defendant contends Plaintiff's Exhibit 7 (a transcript of Plaintiff's deposition) in which Plaintiff testifies other employees "didn't talk" to her following *Schoen I* is irrelevant. The conduct of employees after Plaintiff's return to work, however, could support Plaintiff's allegations that Defendant's management bore animus toward Plaintiff that filtered down to its employees. Thus, the Court will consider Exhibit 7 for purposes of Defendant's Motion.

Defendant contends Plaintiff's Exhibits 21, 24, 34, 38, 40, 49-50, and 53 (clinicians' reports of Plaintiff's disability purporting to pertain to Plaintiff's "adjustment disorder") are irrelevant. These exhibits, however, tend to show the reasons underlying Plaintiff's extended medical leaves of absence after she returned to work in September 2005. Thus, the Court will consider these exhibits for purposes of Defendant's Motion.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

As noted, Plaintiff's claims fall into three categories: In Claims One and Two, Plaintiff alleges she was discharged in retaliation for filing *Schoen I* in violation of Oregon statutes

15 - OPINION AND ORDER

or, in the alternative, in violation of Oregon common law; in
Claims Three and Four, Plaintiff alleges she was terminated in
retaliation for enforcing her rights as an injured worker in
violation of Oregon statute and Oregon common law; and in Claims
Five and Six, Plaintiff alleges she was terminated in retaliation
for resisting sexual harassment in the workplace in violation of
Oregon statue and Oregon common law.

### Standards

I.   **Summary Judgment**.

Federal Rule of Civil Procedure 56(c) authorizes summary
judgment if no genuine issue exists regarding any material fact
and the moving party is entitled to judgment as a matter of law.
The moving party must show the absence of an issue of material
fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir.
2002). In response to a properly supported motion for summary
judgment, the nonmoving party must go beyond the pleadings and
show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.'"
*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th
Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
248 (1986)). The court must draw all reasonable inferences in
favor of the nonmoving party. *Id*. "Summary judgment cannot be
granted where contrary inferences may be drawn from the evidence

16 - OPINION AND ORDER

as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## II. <u>**Burden-Shifting Analysis.**</u>

The Court applies the burden-shifting framework announced by the Supreme Court in *McDonnell Douglas Corp. v. Green* to all of Plaintiff's retaliation claims. 411 U.S. 792, 802-04 (1977). *See also Snead v. Met. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1092 (9th Cir. 2001)(the *McDonnell Douglas* burden-shifting framework is federal procedural law); *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987)("The *McDonnell-Douglas* order and allocation

of proof that governs disparate treatment claims also governs retaliation claims."); *Williams v. Fed. Express Corp.*, 211 F. Supp. 2d 1257, 1264 (D. Or. 2002)("In a retaliation case, the burden shifting scheme is similar to that in a discrimination case, and applies to claims under both state and federal law.").

The plaintiff has the initial burden to establish a *prima facie* case for each of her claims for retaliatory termination. To establish a *prima facie* case, the plaintiff must present sufficient admissible evidence to raise an inference that misconduct occurred, but the plaintiff does not have to prove actual discrimination. *Warren v. City of Carlsbad,* 58 F.3d 439, 442 (9th Cir. 1995). To defeat summary judgment, the evidence may be "minimal and does not even need to rise to the level of preponderance of the evidence." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889-90 (9th Cir. 1994). "[W]e require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can be resolved through a searching inquiry-one that is most appropriately conducted by the fact-finder, upon a full record." *Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1410 (9th Cir. 1996)(citations omitted).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for terminating the plaintiff.

*McDonnell Douglas,* 411 U.S. at 802-04.

Finally, if the defendant carries its burden, the plaintiff must prove by a preponderance of the evidence that the defendant's reasons were merely a pretext for discrimination. *Id.*

**Discussion**

**I.    Plaintiff's Claims One and Two.**

In Claim One, Plaintiff alleges Defendant discharged her in retaliation for filing *Schoen I* in violation of Or. Rev. Stat. § 659A.040 or, in the alternative, Oregon common law.

Or. Rev. Stat. § 659A.040 provides it is an unlawful employment practice to discriminate against an employee because she has invoked the benefits or procedures provided for in Oregon's workers' compensation scheme, Or. Rev. Stat. Chapter 656.  Plaintiff urges the Court to find that the Oregon Court of Appeals has suggested that filing a workers' compensation claim is an "invocation" of Chapter 656 for purposes of Or. Rev. Stat. § 659A.040.  *See Williams v. Freightliner, LLC*, 196 Or. App. 83, 93 (2004)("From the foregoing facts, a jury could infer that plaintiff was terminated because she had filed a workers' compensation claim, had reported a worsening of the injury, and had complained about the way that defendant was refusing to accommodate her.").  In the alternative, Plaintiff asserts Defendant violated Oregon common law by wrongfully discharging

her in retaliation for filing *Schoen I* in which she pursued an employment-related right as an injured worker to be free from discrimination.  *See, e.g., Delaney v. Taco Time Int'l, Inc.*, 297 Or. 10, 16 (1984)(termination of an employee for pursuing a private, statutory right constitutes a wrongful-discharge claim under Oregon common law).

In Claim Two, Plaintiff alleges Defendant violated Or. Rev. Stat. § 659A.030(1)(f) by discharging her in retaliation for filing *Schoen I*.  Section 659A.030(1)(f) provides it is an unlawful employment practice to "discharge . . . [an employee] because that [employee] has opposed any unlawful practice, or . . . filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."

A.   **Plaintiff's *Prima Facie* Burden.**

To establish a *prima facie* case as to Claims One and Two, Plaintiff must show her filing of *Schoen I*, a protected activity, was a "substantial factor" in her termination; *i.e.*, that this protected activity was a "factor that made a difference" in Defendant's discharge decision.  *See, e.g., Estes v. Lewis and Clark Coll.*, 152 Or. App. 372, 381 (1998), *rev. denied*, 327 Or. 538 (1998)(citing *Holien v. Sears, Roebuck and Co.*, 289 Or. 76, 90 n.5 (1984)).

Plaintiff contends Defendant's animus toward her for filing *Schoen I* is demonstrated by the behavior of co-workers who

20 - OPINION AND ORDER

Plaintiff alleges followed the lead of Defendant's management by giving her the "silent treatment" when she returned to work. Plaintiff also asserts Defendant demonstrated its animus toward her by wrongfully denying her the opportunity to work overtime in October 2005.

Moreover, Plaintiff contends the most persuasive evidence of Defendant's retaliation against her for filing *Schoen I* is that Defendant "tricked" her into believing its medical-authorization requirements were relaxed in her case and, through the misrepresentations of LaRochelle, Defendant's Occupational Health Nurse Rosemary Rasmussen, and others, that she could file her medical authorizations late.  If not for these alleged misrepresentations, Plaintiff asserts she would not have incurred three RRLs and Defendant would not have had a reason to terminate her.

Viewing the facts in the light most favorable to Plaintiff, the Court concludes Plaintiff has met her minimal initial burden under *McDonnell Douglas* to establish a *prima facie* case that Defendant's animus against Plaintiff for filing *Schoen I* led to Plaintiff's termination.  *See as noted Wallis*, 26 F.3d at 889 (the "requisite degree of proof necessary to establish a *prima facie* case . . . on summary judgment is minimal and does not even need to rise . . . to a preponderance of the evidence.").

**B.    <u>Defendant's Legitimate, Nondiscriminatory Reason for Terminating Plaintiff</u>.**

Defendant contends it is entitled to summary judgment because it terminated Plaintiff solely for the legitimate, nondiscriminatory reason that she incurred three RRLs for late medical authorizations, and the collective-bargaining agreement with Plaintiff's union mandates termination under such circumstances.  Defendant maintains each of Plaintiff's RRLs were issued for legitimate reasons, and, moreover, the record establishes through the letters sent to Plaintiff by LaRochelle and the notes of conversations between LaRochelle and Plaintiff that Plaintiff did not have a reasonable basis to believe that Defendant had relaxed the medical-authorization requirement in her case or that she had an exemption or dispensation from Defendant's requirement for the timely filing of medical authorizations.

Plaintiff does not contest that she filed the medical authorizations late that led to each of her RRLs nor does she contest that Defendant's collective-bargaining agreement with Plaintiff's union mandates automatic termination for any employee who has received three RRLs.

The Court, therefore, concludes on this record that Defendant has satisfied its burden under *McDonnell Douglas* to establish its decision to terminate Plaintiff was based on a legitimate, nondiscriminatory reason that was unrelated to the filing of *Schoen I*.

22 - OPINION AND ORDER

**C.** **Plaintiff Fails to Provide Any Basis to Conclude that Defendant's Reasons for Terminating Her Are Pretextual.**

Plaintiff contends Defendant's proffered reasons for terminating her are mere pretext for discrimination.

To illustrate Defendant's alleged animus toward her, Plaintiff points to September 27, 2005, correspondence from Defendant that singled her out and advised that her refusal to consider Defendant's suggestion that she submit any complaints through a special "back channel" was "duly noted."  Plaintiff contends Defendant's statements give rise to an inference that Defendant harbored animus toward Plaintiff and was merely waiting for a pretextual reason to terminate her.  Plaintiff, however, has not explained how Defendant's statements give rise to an inference regarding Defendant's motives for terminating Plaintiff several months later.

Although Plaintiff reiterates Defendant led her to believe that she had an open-ended exception to turn in medical authorizations late, the record, as noted, contains letters to Plaintiff and notes of conversations between LaRochelle and Plaintiff that establish Defendant did not give Plaintiff an exception.  In addition, the record reflects Defendant has occasionally given employees an extra hour or two to submit documentation, but the record does not contain any evidence that Defendant has ever granted an extension as long as two days.  In fact, the record indicates Defendant has often issued RRLs when

23 - OPINION AND ORDER

an employee submitted an authorization that was only two or three hours late.  *See* Garr Decl. ¶ 9.

Moreover, the record also refutes Plaintiff's assertion that she had a reasonable basis to believe Defendant granted her an exception that allowed her to turn in her authorizations for medical leave after the mandated deadlines.  As noted, LaRochelle indicated in a letter to Plaintiff that the first RRL was justified by Plaintiff's failure to comply timely with Defendant's medical-authorization reporting requirements and reiterated this statement in a second letter to Plaintiff on December 14, 2005.  There is not any evidence in the record that Plaintiff objected to LaRochelle's letters.  In addition to LaRochelle's letters and notes, chart notes taken by nurse Marilynd Turnock on February 3, 2006, indicate Plaintiff was aware she needed to submit a doctor's note timely in order to avoid receiving a second RRL.  In the chart notes, Turnock reported:  "If she doesn't have a letter it is unexcused.  She needs to turn in the letter no later than 2/07/06 at 2:30pm when her shift ends."  Plaintiff apparently also asked for the authorization to be prepared in advance to be on the safe side.  Nevertheless, Plaintiff submitted the documentation late, which led to her second RRL.

The record also verifies Defendant's contention that it did not issue RRLs to Plaintiff unfairly or without cause.  For

24 - OPINION AND ORDER

example, Defendant started to prepare an RRL against Plaintiff on January 4, 2006, but Defendant did not issue it because Defendant determined Plaintiff may have reasonably thought she was excused for one more work day.  Defendant's actions in this instance undermine Plaintiff's suggestion that her termination was caused by Defendant's animus toward her and supports Defendant's contention that it applied its medical-authorization requirements fairly as to Plaintiff.

In summary, the Court concludes on this record Plaintiff's assertion that Defendant "tricked" her into believing she had an exception that allowed her to turn in authorizations for medical leave late and then discharged her after issuing three RRLs against her in retaliation for filing *Schoen I* does not withstand evidentiary scrutiny.  In short, Plaintiff has not carried her burden to show that Defendant's reasons for terminating her were pretextual, and, therefore, the record rests with Defendant's evidence that it terminated Plaintiff for a legitimate, nondiscriminatory reason.

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's Claims One and Two.

**II.  <u>Plaintiff's Claims Three and Four</u>.**

In Claim Three, Plaintiff alleges she was wrongfully discharged in retaliation for asserting her statutory rights as an injured worker in violation of Oregon common law.  In Claim

Four, Plaintiff alleges she was terminated because Defendant did not want to accommodate her shoulder injury in violation of Or. Rev. Stat. § 659A.100.  Plaintiff generally contends Defendant was required to accommodate her due to her shoulder injury and terminated her rather than doing so.  In Claims Three and Four, therefore, Plaintiff alleges retaliatory discharge.

Or. Rev. Stat. § 659A.100 defines a number of terms and phrases used in Oregon statutes that prohibit disability discrimination, but this section does not appear to provide for a cause of action.  Oregon Revised Statutes § 659A.112, however, provides it is an unlawful employment practice to discriminate against an otherwise qualified worker on the basis of a permanent injury or disability.

A.    **Plaintiff's *Prima Facie* Case.**

Whenever possible, Or. Rev. Stat. §§ 659A.112 to 659A.139 are construed in a manner consistent with the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.  See* Or. Rev. Stat. § 659A.139.  "To establish a prima facie case of retaliation under the ADA, an employee must show that:  (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosp.,* 389 F.3d 840, 849 (9th Cir. 2004).

Plaintiff contends before *Schoen I* Defendant did not want to

26 - OPINION AND ORDER

accommodate her shoulder injury and placed her in demeaning jobs even though better positions were available.  Plaintiff alleges Defendant's animosity engendered by the requirement of accommodating Plaintiff ultimately led to her termination.  As evidence of Defendant's alleged animosity, Plaintiff asserts she was frequently disrespected and demeaned by her supervisors following her shoulder injury in 2004.  In particular, Plaintiff asserts Trudy Houghton, her former supervisor, told her:  "You're worthless.  We don't need you."  Schoen Depo. 72:21-73:3, 74:16-18.

Defendant, however, points out Houghton, the manager with whom Defendant appears to have had the most negative interaction, ceased working for Defendant even before the jury reached a verdict in *Schoen I*, and, therefore, Houghton did not have anything to do with Plaintiff's termination.  In fact, the primary bases for Claims Three and Four appear to be events that occurred long before *Schoen I* concluded.

Plaintiff also contends Defendant denied Plaintiff the opportunity to work overtime in October 2005 because of her shoulder injury.  Plaintiff contends this incident demonstrates Defendant did not want to accommodate her even after *Schoen I* and, as a result, terminated her.

The record, however, does not reflect Defendant denied overtime to Plaintiff for discriminatory reasons.  In fact, as

noted, after Plaintiff complained to LaRochelle on October 24, 2005, LaRochelle investigated, subsequently informed Plaintiff that her supervisor erroneously thought she could not work overtime because of her previous shoulder injury, and advised Plaintiff that "you will be offered overtime if there is work available that falls within your normal work assignment."  Thus, there is not any evidence that Defendant's initial denial of overtime was based on any animus toward Plaintiff.

With the exception of the overtime issue, there is not any evidence of incidents after *Schoen I* that gives rise to any inference that Defendant was reluctant to or refused to accommodate Plaintiff or that her shoulder injury was causally connected to her termination.  On this record, therefore, the Court concludes Plaintiff has not carried her burden to establish a *prima facie* case as to Claims Three and Four.

Even if the Court concluded Plaintiff could establish a *prima facie* case of retaliation against her as an injured worker, however, there is not any evidence specific to Claims Three and Four that would alter the Court's earlier conclusion that Defendant has established it terminated Plaintiff for the legitimate, nondiscriminatory reason that she incurred three RRLs for filing late authorizations for medical leave.

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's Claims Three and Four.

III. **Plaintiff's Claims Five and Six**.

In Claim Five, Plaintiff contends she was wrongfully discharged for resisting sexual harassment in violation of Oregon common law.  In Claim Six, Plaintiff asserts retaliatory discharge for resisting sexual harassment in violation of Or. Rev. Stat. § 659A.030(1)(f).

**A.    Plaintiff's *Prima Facie* Case.**

Or. Rev. Stat. § 659A.030(1)(f) provides it is an unlawful employment practice for an employer to discharge an employee for resisting an unlawful practice such as sexual harassment.  The standards for retaliation under Title VII and § 659A.030 are the same.  *See, e.g., Jamal v. Wilshire Mgmt. Leasing Corp.*, 320 F. Supp. 2d 1060, 1078 (D. Or. 2004).  *See also id.* (the elements of a *prima facie* case under Title VII and Oregon Revised Statutes are identical).  In addition, if Plaintiff can make out a *prima facie* case of termination due to sexual harassment under § 659A.030(1)(f), she can also make a *prima facie* case for wrongful discharge under Oregon common law for retaliation based on invoking an employment-related right.  *See, e.g., Delaney*, 297 Or. at 16 (alleged sexual harassment by supervisor constituted a wrongful-discharge claim).  Thus, to make out a *prima facie* case of retaliation, the plaintiff "must show that (1) he engaged in a protected activity, such as the filing of a complaint alleging sexual harassment; (2) [the employer] subjected him to an adverse

29 - OPINION AND ORDER

employment action; and (3) a causal link exists between the
protected activity and the adverse action." *Hardage v. CBS
Broadcasting, Inc.*, 427 F.3d 1177, 1188 (9th Cir. 2005)(internal
citations omitted).

It is undisputed that Plaintiff engaged in a protected
activity when she complained to LaRochelle on October 21, 2005,
that she was unwillingly exposed to pornography on October 18,
2005.  It is also undisputed that termination is an adverse-
employment action.  Thus, only the causal connection between the
two elements is at issue.

As noted, Plaintiff's sexual-harassment complaint to
LaRochelle occurred on October 21, 2005.  LaRochelle initiated an
investigation regarding the incident, which led to multiple
suspensions.

Plaintiff's allegation that Defendant placed a "bull's-eye"
on her after she complained about the pornography incident is not
supported by the record.  Although Plaintiff may have been
threatened or harassed by some co-workers, there is not any
evidence that Defendant's actions were the cause of the
harassment or that Defendant knowingly failed to stop or to
respond to any harassment.  In fact, the record reflects
LaRochelle and others in management took her complaint seriously,
investigated it, and reacted to the situation in an appropriate
and reasonable manner.  Thus, Plaintiff has not provided any

evidence that her complaint of sexual harassment was a factor considered by the individuals who made the decision to terminate her.  In fact, it was over three months later that Defendant terminated Plaintiff for receiving three RRLs.

Viewing the facts in the light most favorable to Plaintiff, the Court concludes Plaintiff has not stated a *prima facie* case that her complaint of sexual harassment was causally linked to her termination.

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's Claims Five and Six.


### CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (#23) and, accordingly, **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 10th day of April, 2007.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


31 - OPINION AND ORDER